UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DONALD J. DIBBLE,

                              Plaintiff,

  -against-                                    1:97-CV-1256
                                                          (LEK/RFT)

JOHN H. FENIMORE, V, Major General,
New York Air National Guard [1];
SECRETARY OF THE AIR FORCE,
F. WHITTEN PETERS,

                              Defendants.
_____

## MEMORANDUM-DECISION AND ORDER[2]

### I. Background

Plaintiff Donald J. Dibble ("Dibble" or "Plaintiff") commenced this action against Secretary of the Air Force F. Whitten Peters ("Peters" or "Defendant" or "Secretary") pursuant to 10 U.S.C. § 1552. Plaintiff seeks a declaration that the denial of relief by the Air Force Board of Correction of Military Records ("Board" or "AFBCMR"), and its finding of insufficient evidence of error or injustice, is arbitrary and capricious, contrary to law, and unsupported by substantial evidence. Currently before the Court is Defendant's motion to dismiss, and cross-motions for summary judgment by Plaintiff and Defendant.

---

    [1] Major General Fenimore was dismissed from this case by Order of the Court dated May 26, 2004 (Dkt. No. 104), pursuant to the Mandate from the Second Circuit, issued December 10, 2003 (Dkt. No. 99). General Fenimore remains in the caption solely for purposes of continuity of the filings.

    [2] For printed publication by the Federal Reporters.

## II. Facts

Dibble was employed as a federal excepted service technician by the New York Air National Guard ("Air Guard"). Second Amended Complaint (Dkt. No. 79) at ¶¶ 10-11. He was also a union steward for the Association of Civilian Technicians at the Stewart Air National Guard Base, which has a collective bargaining agreement with the Air Guard. Id. at ¶¶ 13-14. 32 U.S.C. § 709(b) required that he remain a member of the Air Guard in order to be employed as a technician. Id. at ¶¶ 11-12. Therefore, when the Air Guard denied Dibble's 1994 request to reenlist, he was honorably discharged on October 8, 1994, and automatically terminated from his position as a technician. Id. at ¶ 2. Plaintiff contends that the reason for the Air Guard's refusal to reenlist him is retaliation for his union activities, in violation of statutory and constitutional rights. Plntf's Resp. Affid. (Dkt. No. 40) at 2. However, the Air Guard contends that he was not reenlisted because of incidents of misconduct. Deft's Mem. of Law (Dkt. No. 37) at 13-14.

After an investigation conducted at Dibble's request, the Inspector General upheld the denial of enlistment in April of 1995. Second Amended Complaint (Dkt. No. 79) at ¶¶ 3-4. In December of 1995, in response to Dibble's request to reconsider his decision, the Inspector General told him that he could apply to the AFBCMR for a correction of his military records, which Dibble did. Id. at ¶ 5. The Board denied his application on October 28, 1997. Affid. of AUSA Woods (Dkt. No. 37, Attach. 1) at 1-2. Plaintiff thereafter commenced this action. In a January 19, 2000 Memorandum-Decision and Order ("January 2000 MDO"), the Court granted Dibble's motion for partial summary judgment, and remanded the case to the Board with instructions to make certain information available to the Plaintiff, as well as to answer specific questions posed by the Court.

First, the Court ordered the Board to "obtain, and make available to Plaintiff, any evidence

relevant to assertions that plaintiff's Air Guard superiors were hostile toward him because of his union activities or that they desired to retaliate against him because he defeated their attempt to suspend him." January 2000 MDO (Dkt. No. 59) at 13.  Second, the Board was ordered to "obtain and make available to Plaintiff records of members of his Air Guard unit who have in a relevant time period been granted or denied reenlistment, with respect to (1) their 'performance in a military capacity,' (2) the bases for the decisions to grant or deny them reenlistment, and (3) in each case whether the Air Guard member was also employed as a technician and had ever served as a union official." Id.  The Court also directed the Board to address five issues:

> (1) [w]hether Plaintiff's Air Guard superiors were hostile toward him because of his past union activities; (2) [w]hether Plaintiff's Air Guard superiors punished Plaintiff, but not other Air Guard members, for minor transgressions; (3) [w]hether Plaintiff's Air Guard superiors sought to suspend Plaintiff for purported misconduct that was far less serious than misconduct by other Air Guard members that they ignored; (4) [w]hether Plaintiff's Air Guard superiors desired to retaliate against Plaintiff because he defeated their attempt to suspend him; and (5) [w]hether Plaintiff's Air Guard superiors denied Plaintiff reenlistment in the Air Guard, and thus terminated his employment, for pretextual reasons that would apply to many Air Guard members who were not denied reenlistment – pretextual reasons that were "far less significant than misconduct by others" who were not barred from reenlistment.

Id. at 14.  The Board was further directed "to make specific and numbered findings of fact, and conclusions of law based on such factual findings, on each of Plaintiff's claims".  The Board was ordered to give reasoning for its decision that was not contrary to the evidence before it, especially the evidence that the Air Guard found Plaintiff eligible[3] to reenlist.  Id. at 14-15.

Pursuant to the January 2000 MDO, the Board issued a decision on October 2, 2001, concluding that Dibble did not demonstrate the existence of probable material error or injustice. Board Decision (Dkt. No. 74) at 4.  Therefore, the Board again recommended to the Secretary that

---

[3] This discrepancy between eligibility and ineligibility is addressed *infra*, at page 11.

3

Dibble's application for correction of his records be denied, which was accepted by the Secretary's designee Joe G. Lineberger. Id. Thereafter, on July 24, 2002, Dibble filed his second supplemental complaint, claiming that the decision of the Board on remand, and thus the Secretary's adoption of it, was "arbitrary and capricious, contrary to law, and unsupported by substantial evidence." Second Amended Complaint (Dkt. No. 79) at ¶ 105. In his complaint, Dibble seeks, *inter alia*, a declaration that the Board's findings and conclusions are arbitrary and capricious, contrary to law, and unsupported by substantial evidence. Id. at ¶ 125. Further, Plaintiff seeks equitable relief in the form of a correction of his military records to indicate that he was not denied reenlistment and was therefore not separated effective October 8, 1994, but rather was reenlisted and did not suffer a break in service time. Id.

Currently before the Court is Defendant's Motion to dismiss, or in the alternative, for summary judgment. Deft's Motion (Dkt. No. 87). Also before the Court is Plaintiff's Cross-Motion for partial summary judgment. Plntf's Cross-Motion (Dkt. No. 90).

### III. Discussion

#### *A. Applicable Standards of Law*

    **i.    Rule 12(b)(6) Standard**

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure must be denied "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Cohen v. Koenig, 25 F.3d 1168, 1172 (2d Cir. 1994) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In assessing the sufficiency of a pleading, the Court must "assume all well-pleaded factual allegations to be true, and... view all reasonable

inferences that can be drawn from such allegations in the light most favorable to the plaintiff." Dangler v. New York City Off Track Betting Corp., 193 F.3d 130, 138 (2d Cir. 1999). Consideration is limited to the complaint, written instruments that are attached to the complaint as exhibits, statements or documents that are incorporated in the complaint by reference, and documents on which the complaint heavily relies.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (citations omitted).

    ii.  **Summary Judgment Standard**

  Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In applying this standard, courts must "'resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.'"  Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001) (quoting Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001)).

  Once the moving party meets its initial burden by demonstrating that no material fact exists for trial, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citations omitted).  The nonmovant "must come forth with evidence sufficient to allow a reasonable jury to find in her favor."  Brown, 257 F.3d at 251 (citation omitted).  Bald assertions or conjecture unsupported by evidence are insufficient to overcome a motion for summary judgment.  Carey v.

Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991); W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990).

### iii.     Review of Board Decision

Decisions of a military Correction Board are subject to judicial review. Chappell v. Wallace, 462 U.S. 296, 303 (1983). Review of a Correction Board decision is governed by § 706 of the Administrative Procedure Act ("A.P.A."). Pursuant to § 706(2)(A), a court shall not set aside an agency action unless that action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." Falk v. Sec'y of the Army, 870 F.2d 941, 944 (2d Cir. 1989); Blassingame v. Sec'y of the Navy, 811 F.2d 65, 72 (2d Cir. 1987). The Second Circuit has encapsulated the Supreme Court's holding in this area. "To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one." Blassingame, 811 F.2d at 72 (citing and quoting Citizens to Pres. Overton Park v. Volpe, 401 U.S. 402, 416 (1971)).

A decision is arbitrary and capricious under the A.P.A. if the agency "relied on factors [that] Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, [or] offered an explanation for its decision that runs counter to the evidence before the agency." Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). Under § 706(2)(E), the court shall set aside an agency decision that is "unsupported by substantial evidence." Falk, 870 F.2d at 944. However, the court's review is "much more limited than when a court reviews a case *de novo*", Falk, 870 F.2d at 944-45, and the Court instead "determine[s], based on the record below, if the decision was based on relevant factors and whether there was a clear

error in judgment", McEniry v. United States, No. CV-86-1223, 1989 WL 106851, at *3 (E.D.N.Y. Sept. 19, 1989). "[T]he court generally should make its decision on the basis of the factual record as it appeared before the agency." Blassingame, 811 F.2d at 72 (citing Florida Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985)). "Further, it is familiar law that an agency decision is supported by substantial evidence if there is 'such evidence as a reasonable mind might accept as adequate to support a conclusion.'... If so, the agency's decision must be accepted even when the court would have drawn a different conclusion from the evidence." Falk, 870 F.2d at 945 (citing and quoting Consol. Edison v. N.L.R.B., 305 U.S. 197, 229 (1938); and citing Local One, Amalgamated Lithographers v. N.L.R.B., 729 F.2d 172, 175-176 (2d Cir. 1984)). See also Hoffman v. United States, 894 F.2d 380, 385 (Fed. Cir. 1990) ("Military officers, like other public officials, are presumed to 'discharge their duties correctly, lawfully, and in good faith.'") (citing cases); Quailes v. United States, 25 Cl. Ct. 659, 663 (1992) ("plaintiff must overcome the presumption that 'administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith.'... Although the court might disagree with the board's decision, it cannot substitute its own judgment for that of the board if reasonable minds could reach differing resolutions of a disputed fact.") (citations omitted). Basically, a court may not "substitute its judgment for that of the agency." Falk, 870 F.2d at 945 (internal quotation marks omitted; quoting Overton Park, 401 U.S. at 416).

In addition, the Records Board itself wields *discretionary* power to correct military records. "Congress has directed the Secretary... to establish boards of civilians, which '*may* correct any military record of that department when [the Secretary] considers it necessary to correct an *error* or remove an *injustice*.'" Falk, 870 F.2d at 945 (emphasis in original; citations omitted). Moreover,

7

"we must give the Records Board's ruling increased deference because of the military context in which this appeal arises." Id. The President is the Commander in Chief of the Armed Forces, and Congress is vested with the power to, *inter alia*, raise and support the Army and Navy. Id. (citing, *inter alia*, U.S. Const. Art. I, § 8 & Art. II, § 2). But, Article III of the Constitution does not vest United States Judges with any authority to organize or supervise the military, and thus "judicial deference in the military context is 'greater than [in] any other area,'... because the military is a 'separate community' from civilian society." Id. (citations omitted). However, the Second Circuit has held that deferential review is not synonymous with "'no review,' and [does not] afford[] the military *carte blanche* in the disposition of matters that come before its administrative bodies." Id.

### B. Defendant's Motion to Dismiss

The Secretary first contends that Plaintiff has failed to state a claim because the Board does not have the authority to order the state militia to reinstate the Plaintiff. Deft's Mem. of Law (Dkt. No. 89) at 6; Deft's Mem. of Law in Opp. to Plntf's Motion (Dkt. No. 96) at 1-4. However, reinstatement in the state militia is not the only relief that Plaintiff seeks. Plaintiff also requests that the Court find the Board's decision arbitrary and capricious, contrary to law, and unsupported by substantial evidence, and therefore order a correction of Plaintiff's military records. Second Amended Complaint (Dkt. No. 79) at 50. This Court has the authority to award such relief.

Defendant also asserts that Plaintiff's claims are non-justiciable because uniformed military personnel may not bring employment discrimination claims against the armed forces or military superiors pursuant to the doctrine of intra-military immunity. Deft's Mem. of Law (Dkt. No. 89) at 13, 15. However, as the Court noted in its January 2000 MDO, the current complaint against the Secretary concerns the reasonableness of the Board's review of the action taken by the Air Guard,

8

not the initial denial of reenlistment. Decisions of the Board, as an agency decision, "are subject to judicial review and can be set aside if they are arbitrary, capricious, or not based upon substantial evidence." Chappell, 462 U.S. at 303 (citing cases). Neither party disputes this. See Deft's Mem. of Law (Dkt. No. 89) at 19-20; Plntf's Mem. of Law (Dkt. No. 94) at 4.

Upon review, it does not "'appear[] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Koenig, 25 F.3d at 1172. Therefore, the Defendant's Motion to dismiss is denied.

### *C. Summary Judgment*

Defendant, in the alternative, moves for summary judgment based upon the administrative record. Deft's Mem. of Law (Dkt. No. 89) at 3. Plaintiff has filed a Cross-Motion for partial summary judgment, claiming, *inter alia*, that the Board failed to comply with this Court's January 2000 MDO, and, therefore, is not in accordance with the law - in violation of the Administrative Procedure Act, 5 U.S.C. § 706. Plntf's Mem. of Law (Dkt. No. 94). For the reasons that follow, Defendant's Motion for summary judgment is granted, Plaintiff's Cross-Motion is denied, and the matter is dismissed.

Compliance with this Court's January 2000 MDO is necessary. The Court ordered the Correction Board to "obtain, and make available to Plaintiff, any evidence relevant to assertions that Plaintiff's Air Guard superiors were hostile toward him because of his union activities or that they desired to retaliate against him because he defeated their attempt to suspend him." January 2000 MDO (Dkt. No. 59) at 13. The Board was also instructed to:

> obtain and make available to Plaintiff records of members of his Air Guard unit who have in a relevant time period been granted or denied reenlistment, with respect to (1) their "performance in a military capacity," (2) the bases for the decisions to grant or deny them

9

reenlistment, and (3) in each case whether the Air Guard member was also employed as a technician and had ever served as a union official.

Id. at 13.

Plaintiff asserts that the Board did not satisfy the Court's first instruction because the Board did not conduct an investigation, but instead obtained only "advisory opinions" from Air Guard lawyers and responses from Plaintiff's lawyer to such opinions. Plntf's Mem. of Law (Dkt. No. 94) at 9. But, the Board received advisory opinions from the 105th Airlift Wing Deputy Staff Judge Advocate, the Air Guard Staff Judge Advocate, and the Chief of the General Law Division. Board Decision (Dkt. No. 74) at 6; Deft's Mem. of Law in Opp. to Plntf's Motion (Dkt. No. 96) at 7 & nn.2-3. The Board provided these opinions to Plaintiff for his review and response, as required.

This Court's prior Order required that the Board obtain and make records available. But, as the Board wrote:

> it appears that the governing regulations do not require the retention of individual reenlistment records for separated individuals whose reenlistments are denied. Nonetheless, the 105th AW/SJA asserts that they have thoroughly researched their files and been able to locate the records pertaining to five individuals whose reenlistments were denied. In addition, they have provided computer print outs of reenlistment-eligible Guard members for the period January 1994 through June 1994. Given the limited documentation available, however, we are unable to determine with any degree of certainty, the bases for the decisions to grant and deny reenlistment to these individuals, and whether they were also employed as technicians and served as union officials.

Board Decision (Dkt. No. 74) at 9. It is true that the Court must note the facts of the underlying discharge, and the loss of documents and witnesses may hamper the Board's own decision in a matter. But, "the absence of documents and witnesses *reasonably unavailable* is not a basis for a court to set aside a Board decision because under the APA, the court should assess the lawfulness of the Board decision in light of the factual record at the time of the decision." Blassingame, 811 F.2d

at 72 (emphasis added; citing Geyen v. Marsh, 775 F.2d 1303, 1309 (5th Cir. 1985)). In this case, the Court accepts the Board's stated reason for being unable to find all such records. The Court finds no spoliation or other such issue arising in the recordkeeping in this case. The military followed its regulations. And, the Board did review the material available to it, and rendered its decision based upon the complete factual record that was before it. It is also noted that although the Air Force Board did not explain in detail how exactly it weighed all of the factual inputs in arriving at its determination, "it sufficiently delineated what it considered to permit judicial review of its reasoning." Falk, 870 F.2d at 947 (citing, *inter alia*, Kalista v. Sec'y of the Navy, 560 F. Supp. 608, 613 (D. Colo. 1983) (which, as the Falk Court noted parenthetically, held that: the "requirement that the Army give reasons for its decision does not mandate an 'extensive exegesis' of those reasons")).

Furthermore, the Board has sufficiently explained the discrepancy between why Plaintiff was, at one time, found "ineligible" for reenlistment, but then listed as "eligible" for reenlistment at a different time. As the Board explains:

> [t]he New York ANG, Staff Judge Advocate, NY ANG/SJA, reviewed the application and states that applicant was denied reenlistment based upon a pattern of disciplinary infractions, which made him unsuitable for continued military service. When the applicant separated, his Record of Separation was coded to reflect that he was ineligible to reenlist, as was the commander's prerogative. The NY ANG subsequently corrected the applicant's Record of Separation to reflect that he was eligible to reenlist. However, they concur with the 105th AW/SJA that the correction was an administrative error by the NY ANG. They interviewed the Assistant State Adjutant, the NCOIC of enlisted programs, the Inspector General, and one Executive Support Staff Officer from that time. Their investigation indicated that the Assistant State Adjutant approved the correction to the Record of Separation upon the oral statement of the NCOIC of enlisted programs with no further support or justification. As such, the change was an unjustified amendment which was completed without any support. *Therefore, they conclude the original Record of Separation indicating that applicant was ineligible to reenlist, was correct and should stand. The denial of reenlistment was supported by the record - the correction was not.*

Board Decision (Dkt. No. 74) at 3-4 (Air Force Evaluation) (emphasis added). See also Deft's

Mem. of Law in Opp. to Plntf's Motion (Dkt. No. 96) at 14.

It is also true that the Court ordered the Board to make "specific and numbered findings of fact, and conclusions of law". January 2000 MDO (Dkt. No. 59) at 14. Although the Board did not actually number each paragraph of its findings, the Board did set forth both its factual findings and legal conclusions in lettered paragraphs, separated by topic of inquiry. Furthermore, the Board did not have to conduct an investigation of its own. The Board obtained all of the available and necessary information for the rendering of its decision, and satisfied its responsibility.

Even assuming, *arguendo*, that there was some protected First Amendment speech and activity concerning Plaintiff's union activities, the Court finds too much time passed between the alleged activity(s) and the alleged retaliatory non-reenlistment (union victories in the early 1990's, and denial of reenlistment at the end of 1994 - Second Amended Complaint (Dkt. No. 79) at ¶¶ 2, 16-24). See Contes v. Porr, 345 F. Supp. 2d 372, 383 (S.D.N.Y. 2004). "[A]s a matter of law in this Circuit, retaliation will not be inferred when a long period of time passes between the exercise of a First Amendment right (protected conduct) and the imposition of the allegedly retaliatory adverse employment decision." Id. (citing, *inter alia*, Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001); James v. Newsweek, No. 96 Civ. 0393, 1999 WL 796173 (S.D.N.Y. Sept. 30, 1999), aff'd, 213 F.3d 626 (2d Cir. 2000) (table), cert. denied, 531 U.S. 926 (2000)). In addition, there were intervening events of misconduct and insubordination that could suffice on their own to provide military reasons for denial of reenlistment to Dibble, regardless of any First Amendment activity that may have also occurred. See Contes, 345 F. Supp. 2d at 383-84 ("the retaliation claim must be dismissed, because too much time passed to support a cause-and-effect conclusion and an intervening event occurred.... *see also Tenkku v. Normandy Bank*, 348 F.3d 737, 742 (8th Cir. 2003)

12

(affirming summary judgment where intervening unprotected events eroded any causal connection between plaintiff's protected conduct and the adverse employment actions); *Smith v. American Airlines Inc.*, No. 99 Civ. 6447, 2001 WL 710108 (N.D. Ill. Jun. 22, 2001) (holding that Court must also look to 'any intervening cause that breaks the causal chain').").

It appears that there were numerous instances of insubordination or misconduct - intervening unprotected events - in this case. The Board, adopting the Air Force Evaluation, found that one of Plaintiff's military supervisor's had written, on 11 May 1994, that "SSgt Dibble is anti-establishment. He refused to follow certain policies and procedures. When approached about mistakes he's made he refuses to accept responsibility." Board Decision (Dkt. No. 74) at 2. The Board also found, when addressing the issue of potential hostility from superior officers,

> the results of the Inspector General inquiry... found that the actions taken against [Dibble] were within a military context, separate of technician considerations, and within the scope of the governing regulation; numerous detailed memoranda of records showing, at least, a lack of judgment on [Dibble's] part; and his own admitted lack of military deportment (referring to a chief master sergeant on a first name basis), we are not convinced that the denial of his reenlistment was driven by hostility.

Id. at 6. Additionally, the Record demonstrates, and the Board found, that Dibble had numerous infractions of military discipline, and that Dibble deserved Letters of Reprimand (which others may not have received) because "it is reasonable to conclude that the commander felt that an LOR was warranted, especially since the applicant had previously received a Letter of Admonition (LOA) and his pattern of disciplinary infractions had continued." Id. at 6-7. The Record reflects the occurrence of the following incidents, *inter alia*:

> 1.) Mark Polizzi, Wing Chief on a particular project who coordinated workers including Dibble, testified at the Administrative Hearing as follows: "Right when I told [Dibble] that [the work assignment had changed], he looked at me kind of viciously and said, 'Stop bouncing me around from one job to another, you better start treating me with a little more

13

respect.' And I told him, in a friendly manner, not in a confrontational manner, 'We are all friends here.' And it was... he lashed out. He was trying to be... kind of mean." Admin. Rec. at 248. Polizzi explained that the two had an exchange, Dibble threw down an air gun that he was holding, and later charged at Polizzi, "snarling... and saying some derogatory things", while Polizzi was standing by a toolbox. Admin. Rec. at 249-250. Dibble told Polizzi that Polizzi was "a nothing", and stated that Dibble would "kick [Polizzi's] ass". Id. at 252. Toward the end of this incident, while the men were still by the toolbox, *up on the wing*, Polizzi testified that "the last [Dibble] said to me that really upset me is, 'I will slaughter you,' and 'You don't know what I can do to you,' giving me comments like that.... And I walked from the toolbox towards the little walkway between the gate and the engine. And that is where [Dibble] shoved me, pushed me with pretty good force. It wasn't a hand on a shoulder, it was a push." Admin. Rec. at 252-253. See also Testimony of Chief Master Sergeant Piampiano (Admin. Rec. at 706-709).

2.) Polizzi testified that he could previously get along with Dibble, but he usually "would steer away from him." Admin. Rec. at 254. Polizzi testified that, one day, during a separate incident in a break room, he was ignoring Dibble, "and [Dibble] was being very sarcastic because I was ignoring him. He knew I was ignoring him. He flung a knife across the table with pretty good force." Id. Polizzi testified that he did not report Dibble at the time, but should have. Polizzi was a new employee, he "didn't want to start a war", and new employees go through initiation, "getting played with all the time." Id. at 254-255.

3.) There were a number of documented incidents from September 1990 to October 1994, where Plaintiff Dibble violated regulations, or was either late to work assignments, missed work assignments or left work assignments early - without prior clearance. Admin. Rec. at 585-609.[4]

4.) Chief Master Sergeant Piampiano testified that at one point, after orally reprimanding Dibble *but not taking any other action*, Dibble responded with "'I'm a lot smarter than you Chief. Keep trying to get the wheels round and your turn is coming.'" Admin. Rec. at 721. Piampiano testified that he issued a Letter of Reprimand for this incident. Id. Although there is some dispute as to what Chief Piampiano may have said to Dibble to trigger this response, the fact remains that Dibble said such a thing to a soldier of superior rank.

---

[4] It is noted that Plaintiff attempts to argue, *inter alia*, that Plaintiff was written up for excused absences, and that Plaintiff only had a few minor transgressions over many years. Plntf's Mem. of Law (Dkt. No. 94) at 15-17. However, this Court counts a number of incidents in 1991 and 1992, followed by several incidents in each of 1993 and 1994. Furthermore, there appears to be little or no evidence of "excused" absences or tardiness.

These selected instances, among others, demonstrate a factual basis for denial of reenlistment that has all to do with military deportment and behavior, and little or nothing to do with constitutionally protected activity. Plaintiff argues that the Board and other Investigators and counsel, *inter alia*, failed to consider Plaintiff's evidence of threats or punishments from superiors. See Plntf's Mem. of Law (Dkt. No. 94). However, as the above-cited incidents make clear, there were a number of serious, unprotected acts on Dibble's part that intervened throughout Plaintiff's Guard career - of sufficient seriousness that a reasonable mind on the Board could conclude that, militarily speaking, Dibble was not eligible for or deserving of reenlistment. Although among the evidence in favor of Plaintiff is a Declaration signed in support of Dibble, by other members of the Guard, stating that similar incidents of missing work assignments, taking an unauthorized coffee break, or breaching uniform clothing regulations could be alleged against others who were not denied reenlistment, Admin. Rec. at 613-618, the Board's decision in this matter does not run counter to the evidence before it, and, again, clearly a reasonable mind on that Board could accept the facts of Dibble's more serious actions, *supra*, in concert with his other violations of military discipline as demonstrating support for the denial of Plaintiff's reenlistment. In fact, two of the three Board members arrived at just such a conclusion.

It is common knowledge that military life differs significantly from civilian life. Soldiers, Sailors and Marines are not free to come and go as they please. They do not make up their own work hours. They do not choose the locations of their jobs. They do not choose what clothes they will wear to work, or even how they will wear those clothes. And, certainly, showing respect to those of higher rank in the chain of command is a must. Military life - as a matter of functionality, necessity and national security - is one of regimented, controlled, ordered existence. See Goldman

v. Weinberger, 475 U.S. 503, 507 (1986) (Rehnquist, J.) ("The military need not encourage debate or tolerate protest to the extent that such tolerance is required of the civilian state by the First Amendment; *to accomplish its mission the military must foster instinctive obedience, unity, commitment, and esprit de corps*.... The essence of military service 'is the *subordination of the desires and interests of the individual to the needs of the service*.'") (emphasis added; citations omitted). See also United States v. Rockwood, 52 M.J. 98, 107 (1999) (Cox, C.J.) ("The difference between a military organization and a mob is the role of command and control in channeling, directing, and restraining human behavior. A modern army is made up of soldiers possessing a variety of skills, and it operates corporately.... The only way the mission can be performed is if all elements perform their functions *in accordance with the guidance and restrictions imposed by the command*.") (emphasis added). Plaintiff, however, seems to have been an individual who fought that military system, not only as a union steward expressing constitutionally protected speech and activity, but also as a soldier who was insubordinate and/or committed acts of misconduct.

Under the test set forth in Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977) (Rehnquist, J.), Plaintiff had to "show that his conduct was constitutionally protected, and that this conduct was a 'substantial factor' or to put it in other words, that it was a 'motivating factor' in the [military's] decision not to [reenlist] him...."[5] If Plaintiff meets that requirement, the burden shifts, and the next determination to be made is "whether the [military/Government] ha[s] shown by a preponderance of the evidence that it would have reached the same decision as to

---

[5] Defendant contends that Mt. Healthy does not apply to this decision or to the Board's decision below. See Deft's Mem. of Law in Opp. to Plntf's Motion (Dkt. No. 96) at 9-10 & nn.11-12. However, the Court has chosen to include discussion of Mt. Healthy herein to illustrate that by whatever standards are employed, Plaintiff will not succeed on his claims.

[Plaintiff's reenlistment] even in the absence of the protected conduct." Id. The case at bar presents numerous instances of both union activity and intervening acts of insubordination or misconduct by Plaintiff, and not intertwined and interrelated acts arising from a single incident, thus allowing this Court to apply the Mt. Healthy test to determine if the military had a sufficient, non-discriminatory reason for denying Plaintiff reenlistment. See, generally, Petramale v. Local No. 17 of Laborers Int'l Union of N. Am., 736 F.2d 13, 18 (2d Cir. 1984). Thus, even assuming, *arguendo*, that Plaintiff has met his burden, his claim still fails. This Court finds, based upon the Record and the Board's decision, that the Secretary has carried his burden.

Furthermore, the Court will not address Plaintiff's claims that other members of the Guard were not penalized with denial of re-enlistment for acts of insubordination or misconduct. This Court is concerned only with Plaintiff in these Motions.[6] This Court will not place itself in the position of reviewing an entire series of military personnel decisions from over a decade ago, and then presume to tell military officials of the Executive Branch how best to hire, retain, discharge or

---

[6] Although, the Court does note that the Board found: "[w]e are not persuaded that [Dibble's] superiors punished him, and not other ANG members for minor transgressions. Although Sgt. C*** was not denied reenlistment, he was stripped of his supervisory position and reassigned elsewhere. In addition, Letters of Reprimand (LORs) were issued to other military members as a result of a fist fight between a supervisor and a shop chief." Board Decision (Dkt. No. 74) at 7. Although Plaintiff repeatedly points to Sergeant Carbone's transgressions as examples of conduct that were not sufficiently punished, see Plntf's Mem. of Law (Dkt. No. 94) at 13-14, Colonel Weaver did strip Sergeant Carbone of his supervisory authority and reassigned him. This could be understood as a rather sufficient military punishment for the transgressions alleged against Sergeant Carbone (that seemed to be largely abuse of supervisory position and abuse of those in his command), see Board Decision (Dkt. No. 74) at 7 - especially since *Plaintiff* is the one who requested that Colonel Weaver meet with all parties, and consider discipline against Sergeant Carbone, see Second Amended Complaint (Dkt. No. 79) at ¶¶ 16-18. And, furthermore, as Defendant points out, Plaintiff does not present any evidence, and the Record does not appear to contain any evidence, that the individuals Plaintiff complains of had records of bearing or behavior problems that matched or exceeded Plaintiff's. See Deft's Mem. of Law in Opp. to Plntf's Motion (Dkt. No. 96) at 13.

17

promote members of the United States Armed Forces.[7]  Inspectors and SJAs have reviewed said materials and decisions, and issued reports, see Deft's Mem. of Law in Opp. to Plntf's Motion (Dkt. No. 96) at 7; the Board and the Plaintiff have reviewed those reports; and the Board has rendered its decisions based upon the evidence and facts presented.  As this Court discussed above, "[t]here is no question that due deference to military decision-making is a part of American Jurisprudence.... Indeed, 'Judges are not given the task of running the Army.... The military constitutes a specialized community governed by a separate discipline from that of the civilian.  Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters.'"  Crane v. Sec'y of the Army, 92 F. Supp. 2d 155, 163 (W.D.N.Y. 2000) (citing and quoting Goldman v. Weinberger, 475 U.S. 503, 508 (1986); Orloff v. Willoughby, 345 U.S. 83, 93-94 (1953)).

Although the Court in Crane found that the plaintiff's discharge was not supported by substantial evidence, granted plaintiff's motion for summary judgment, and ordered the Secretary's decision to be set aside and for plaintiff to be reinstated in the Army, this Court finds Crane distinguishable on the facts.  In Crane, *inter alia*, the Court found that "there is a tremendous amount of evidence in the Administrative Record which favors retaining Crane." Crane, 92 F. Supp. 2d at 167.  Furthermore, the Crane case presented that Court with numerous instances and testimony concerning actual discriminatory and unequal treatment faced by that plaintiff, and with evidence from which a reasonable mind on the Board could have determined that plaintiff acted

---

[7] The Board did find, though (as Plaintiff acknowledged in his papers, Plntf's Mem. of Law (Dkt. No. 94) at 22), that "[w]e have not seen, nor have we been shown any evidence that suggests that any member with an extensive record of bearing and behavior problems comparable to the applicant, was permitted to reenlist in the ANG."  Board Decision (Dkt. No. 74) at 8.

with proper military deportment and was not insubordinate, but rather was clearly targeted. Id. In the case at bar, however, there are documented and reported accounts of Plaintiff Dibble's insubordination and/or misconduct sufficient to support the Board's conclusion that Plaintiff was not eligible for or deserving of re-enlistment.

The Court has evaluated the record, the Board decision, the submissions of the parties, the facts as they appeared before the Board, and the relevant law, and does not find the military personnel decisions in this matter and the decisions of the Board or the Secretary to have been arbitrary or capricious, contrary to law, an abuse of discretion, or otherwise not in accordance with the law.  As such, the Court affirms the Board, and grants Defendant's Motion for summary judgment.  Plaintiff's Cross-Motion is denied.  This matter is dismissed in its entirety.

### IV. Conclusion

Based on the foregoing discussion, it is hereby

**ORDERED**, that Defendant's Motion to dismiss (Dkt. No. 87) is **DENIED**; and it is further

**ORDERED**, that Defendant's Motion in the alternative for summary judgment (Dkt. No. 87) is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's Cross-Motion for partial summary judgment (Dkt. No. 90) is **DENIED**; and it is further

**ORDERED**, that Plaintiff's Complaint is **DISMISSED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED**.

DATED:     May 15, 2006
           Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge